UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

M.K., *a minor, by and through her mother,*
*Sharmil Surujnath*,

                      Plaintiff,

                -against-

VIDALINA LOPEZ, *individually and in her*
*official capacity*, ARLENE MARSH,
*individually and in her official capacity*, and
JESSICA SIRAKOWSKI, *individually and in*
*her official capacity*,

                   Defendants.

---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

23-cv-6579 (BMC)

**COGAN**, District Judge.

This case is before the Court on defendants' <u>Daubert</u> motion to preclude plaintiff's expert, Dr. Michael Fraser, from testifying. As is usually the case, plaintiff's expert provided a report that is broader than his intended testimony. Unusual, however, is that Dr. Fraser provided a supplemental declaration in response to defendants' <u>Daubert</u> motion, which defendants have moved to strike. For the reasons below, defendants' motion to strike is granted in part and denied in part, and defendants' <u>Daubert</u> motion is granted in part and denied in part.

## I. Motion to Strike

Defendants contend that Dr. Fraser's supplemental declaration violates Fed. R. Civ. P. 26(e) and should be stricken. See <u>Lidle v. Cirrus Design Corp.</u>, No. 08-cv-1253, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) ("Rule 26(e) is not . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a

'supplemental' report."). Plaintiff counters that the declaration "offers no new opinions [and] merely refers to specific portions of his [initial report] and clarifies them."

As a threshold matter, the question is not whether Dr. Fraser's supplemental declaration (or initial report) is admissible as evidence. "The purpose of an expert report [is] 'to provide the opposing party with the scope of the opinion that will be provided at trial [and] to allow for an effective cross examination of the witness[.]'" Scott v. City of N.Y., 591 F. Supp. 2d 554, 561 (S.D.N.Y. 2008) (quoting Ordon v. Karpie, 223 F.R.D. 33, 36 (D. Conn. 2004)). So, the Court construes defendants' motion to "strike" Dr. Fraser's supplemental declaration as a motion to preclude him from testifying to the statements therein.

Defendants' first issue with the supplemental declaration relates to Dr. Fraser "separating [plaintiff's] alleged damages from the [1/31/23] search from the other [searches] by reclassifying the [other] searches as "stressors," [and] the [1/31/23 search] as the 'harming or inciting incident[.]'" At the pretrial conference, the Court stated that Dr. Fraser "is going to have to separate out some way the [1/31/23] search, and he is going to have to tie [plaintiff's physical and emotional condition] to that [1/31/23] search." That is precisely what Dr. Fraser has done, and the Court is not going to preclude his testimony to that effect.

Defendants' next issue is that, in the supplemental declaration, Dr. Fraser "officially, and specifically, diagnose[d plaintiff] with PTSD even though his original report only alleged she suffered 'symptoms of PTSD.'" Defendants are wrong. In his supplemental declaration, Dr. Fraser merely explained why he did not use the word "diagnose" before, despite his initial report being "the equivalent of a diagnosis of PTSD." This does not amount to "introducing brand new, previously undisclosed opinions." See Minskoff v. Mendoza, 797 F. Supp. 3d 238, 257 (E.D.N.Y. 2025).

Defendants' last issue relates to Dr. Fraser's explanation "that his diagnosis of PTSD was not based on [the DSM-5], but was instead based on [the] World Health Organization's International Classification of Diseases [("ICD"),] when [that] was never once mentioned in his [initial] report." Defendants misread both Dr. Fraser's initial report and the supplemental declaration. The initial report described the administration of the PCL-5, "a commonly used 20-item self-report questionnaire that is based on DSM-5 criteria for PTSD." In other words, the initial report says that his opinion was made in accordance with the DSM-5, not contrary to it.

However, Dr. Fraser went too far in the supplemental declaration by concluding that "[plaintiff's] experience [also] constitute[s] exposure to 'an extremely threatening event' under the wording of the ICD[.]" That is a "brand new, previously undisclosed opinion[,]" see id., and Dr. Fraser may not testify about the ICD at trial.

## II.     <u>Daubert</u> Motion

Under Fed. R. Evid. 702, the proponent of expert testimony must establish by a preponderance of the evidence that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. In other words, "the Court must determine: (1) whether the witness is a qualified expert; (2) whether the opinion is based on application of reliable data and methodology to the facts of the case; and (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine an issue of fact." <u>Boateng v. Bayerische Motoren Werke Aktiengesellschaft</u>, No. 17-cv-209, 2022 WL 4357555, at *10 (E.D.N.Y. Sept. 20, 2022) (citation omitted).

3

Plaintiff has represented that Dr. Fraser's testimony will be limited to the following topics:

1. His qualifications as a psychologist and related work as described in his report and his *curriculum vitae*;

2. He was asked by plaintiff's counsel to assume that plaintiff accurately described what took place during the 1/31/23 search and its immediate aftermath;

3. His evaluation of plaintiff with two tests, the PAI-A and PCL-5, along with the results and opinions he drew therefrom;

4. His opinion that plaintiff meets the criteria for PTSD, and that she continues to experience symptoms warranting psychological treatment;

5. During his clinical review, plaintiff told him that she experienced multiple non-psychological symptoms after the 1/31/23 search;

6. His opinion that it was the 1/31/23 search that harmed plaintiff and caused the PTSD symptoms that still existed in June 2025;

7. His opinion that plaintiff suffered additional stress by being questioned about whether she was "sure" that she heard Officer Lopez prompt her to lift her shirt;

8. His opinion that plaintiff has experienced ongoing anxiety and stress associated with the Defendants' failure to admit any wrongdoing;

9. His opinion that plaintiff has experienced ongoing anxiety and stress associated with her legal case;

10. His opinions relating to an amicus brief submitted in <u>Safford Unified School District v. Redding</u>, 557 U.S. 364 (2009); and

11. His opinion that the searches prior to the 1/31/23 search were stressors, and did not cause the same emotional injury, but may have affected the severity of the emotional distress caused by the 1/31/23 search.

Defendants do not take issue with points (1) and (2), and their remaining objections are on grounds of relevance, for points (7), (8), (9), and (10); and reliability, for points (3), (4), (5), (6), and (11).

## A.    Relevance

"In determining the relevance of expert testimony, the Court must determine 'whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Minskoff, 797 F. Supp. 3d at 257 (quoting Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002)).

Points (7), (8), and (9) all relate to potential causes of emotional injuries that occurred in the aftermath of January 31, 2023 search.  As the Court made clear at the pretrial conference: "The aftermath [is] irrelevant, because what [matters] is the [January 31, 2023] search." Accordingly, Dr. Fraser will be precluded from testifying about points (7), (8), and (9).

Point (10) relates to a Supreme Court *amicus* brief that plaintiff contends reflects a "consensus opinion . . . reflecting commentary about the likely impact of strip searches in schools on adolescents," and that Dr. Fraser should testify about it because it is "consistent with his experiences [and] consistent with [plaintiff's] condition and symptoms."

The "likely impact of strip searches in schools on adolescents" says nothing about the actual impact of the alleged strip search on plaintiff.  But even assuming otherwise, the Court would exclude reference to the *amicus* brief under Rule 403 because it has little probative value and is unduly prejudicial to defendants.  The clear implication is that the jury should find for plaintiff because the Supreme Court ruled in a "similar" plaintiff's favor.  This case must be decided on its own facts and, accordingly, Dr. Fraser will be precluded from testifying about point (10).

## B.    Reliability

"[E]xclusion of expert testimony is warranted only when the district court finds serious flaws in reasoning or methodology." Lickteig v. Cerberus Cap. Mgmt., L.P., 589 F. Supp. 3d

5

302, 330 (S.D.N.Y. 2022)) (cleaned up).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 596 (1993).

Points (3) and (4) concern Dr. Fraser's proposed testimony relating to PTSD, which defendants contend is unreliable for two reasons: first, because his test did not conform to the DSM-5 and, second, because Dr. Fraser never "diagnosed" plaintiff with PTSD.

As to the first issue, as discussed above, Dr. Fraser's initial report shows that his evaluation was in fact based on the DSM-5.  Even assuming otherwise, however, Dr. Fraser's "opinion and testimony [would] not [be deemed] unreliable [just] because he deviated from the DSM-5's diagnostic criteria[.]"  See Rosario v. City of N.Y., 2021 WL 1930293, at *2 (S.D.N.Y. May 13, 2021).  "Minor flaws in an expert's analysis . . . can be probed through cross-examination and generally go to the weight to be accorded to the expert's testimony rather than admissibility."  MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP, 232 F. Supp. 3d 558, 572 (S.D.N.Y. 2017) (quotations omitted).

As to the second issue, Dr. Fraser's use or nonuse of the word "diagnose" does not make his testimony unreliable.  Dr. Fraser has explained (and will have to explain to the jury) why he did not do so in his initial report, and the jury can determine whether that matters as much as defendants think it does.  Accordingly, Dr. Fraser may testify about points (3) and (4).

Point (5) concerns plaintiff's statement to Dr. Fraser that she suffered non-psychological injuries from the search: hives, a rash, stomach pains, shortness of breath, and migraines.  Defendants take issue with Dr. Fraser's testimony being an improper conduit for factual testimony or credibility-bolstering.  See In re M/V MSC Flaminia, No. 12-cv-8892, 2017 WL

6

3208598, at *2 (S.D.N.Y. July 28, 2017) ("[E]xperts are not percipient witnesses to facts, and they cannot offer factual narratives in the form of expert testimony that would displace the role of the factfinder."); United States v. Hamlett, No. 19-3069, 2021 WL 5105861, at *1 (2d Cir. Nov. 3, 2021) ("[E]xpert opinions that constitute evaluations of witness credibility . . . are inadmissible under Rule 702.").

As plaintiff concedes, Dr. Fraser accepted what she told him at face value, so his recitation of these facts and credibility determination would be improper.  However, because the trial will be bifurcated, this is essentially moot.  Dr. Fraser will testify only if plaintiff prevails on liability, at which point these facts may have already been presented to the jury, and the jury would have likely found plaintiff credible on their own.  Accordingly, Dr. Fraser may testify about point (5) to the extent it concerns facts that he "learn[ed] of [through] and were relevant to [his] psychological evaluations of plaintiff[.]"  See Minskoff, 797 F. Supp. 3d at 253.

Points (6) and (11) relate to Dr. Fraser separating out the emotional harm caused by the January 31, 2023 search and the searches that occurred beforehand.  Defendants do not take issue with the reliability of Dr. Fraser's opinion, but rather, contend that it "is impermissible for Dr. Fraser to have held back part of his opinion, including, specifically, what damages flowed from only the [January 31, 2023] search."  But as discussed above, Dr. Fraser did not hold anything back, and he was merely following the Court's directive.  Accordingly, Dr. Fraser may testify about points (6) and (11).

## CONCLUSION

Defendants' motion to strike is granted in part and denied in part; defendants' Daubert

motion is granted in part and denied in part.

**SO ORDERED.**

Dated:   Brooklyn, New York
         March 5, 2026

*Brian M. Cogan*
_____
U.S.D.J.

8